UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WARNER BROS. ENTERTAINMENT, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:06CV546 HEA |
| DAVE GROSSMAN CREATIONS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Claim for Damages and
Request for Entry of Final Judgment, and Plaintiffs' Motion for Summary
Judgment.  For the reasons set forth below, Plaintiffs' Claim for Damages is
granted.  The request for Entry of Final Judgment will be granted, and Plaintiffs'
Motion for Summary Judgment on their trademark claims is granted.

Plaintiffs brought this action alleging they are the legal and/or beneficial
owners of all copyrights, trademarks, commercial use and merchandising rights,
publicity rights and related rights associated with the motion pictures "Gone With
the Wind" and "Wizard of Oz" and multiple Tom & Jerry animated motion

pictures.[1]  Plaintiffs further alleged Defendants have infringed their copyright and trademark rights, have engaged in unfair competition, and are trading on the goodwill of Plaintiffs.

The Court granted summary judgment to Plaintiffs on their copyright claims, and entered an injunction against Defendants from continuing to infringe the copyrights.  Defendants appealed the entry of the injunction.

On July 5, 2011, the United States Court of Appeals for the Eighth Circuit issued an opinion which affirmed in large part this Court's grant of summary judgment to Plaintiffs on the issue of copyright infringement and the resulting permanent injunction.

Plaintiffs now seek a money judgment on the copyright infringement and summary judgment on their trademark and unfair competition claims.

## Copyright Damages

Section 504 of the Copyright Act provides:

(a) In General -- Except as otherwise provided by this title, an infringer of  copyright is liable for either —

      (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by

---

[1]  For ease of reference, the Court will refer to Wizard of Oz, Gone With The Wind and the Tom and Jerry films as "the subject films" or "the subject motion pictures," unless context requires specifically naming them individuallly.

subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits -- The copyright owner is entitled to
recover the actual damages suffered by him or her as a result of the
infringement, and any profits of the infringer that are attributable to
the infringement and are not taken into account in computing the actual damages. In es
profits, the copyright owner is required to present proof only of the
infringer's   gross revenue, and the infringer is required
                   to prove his or her deductible
expenses and the elements of profit attributable to factors other than
the copyrighted work.

(c) Statutory Damages.--

(1) Except as provided by clause (2) of this subsection,
the copyright owner may elect, at any time before final
judgment is rendered, to recover, instead of actual
damages and profits, an award of statutory damages for
all infringements involved in the action, with respect to
any one work, for which any one infringer is liable
individually, or for which any two or more infringers are
liable jointly and severally, in a sum of not less than
$750 or more than $30,000 as the court considers just.
For the purposes of this subsection, all the parts of a
compilation or derivative work constitute one work.

2) In a case where the copyright owner sustains the
burden of proving, and the court finds, that infringement
was committed willfully, the court in its discretion may
increase the award of statutory damages to a sum of not
more than $150,000. In a case where the infringer
sustains the burden of proving, and the court finds, that
such infringer was not aware and had no reason to
believe that his or her acts constituted an infringement of
copyright, the court in its discretion may reduce the

- 3 -

> award of statutory damages to a sum of not less than
> $200. The court shall remit statutory damages in any
> case where an infringer believed and had reasonable
> grounds for believing that his or her use of the
> copyrighted work was a fair use under section 107, if the
> infringer was: (I) an employee or agent of a nonprofit
> educational institution, library, or archives acting within
> the scope of his or her employment who, or such
> institution, library, or archives itself, which infringed by
> reproducing the work in copies or phonorecords; or (ii) a
> public broadcasting entity which or a person who, as a
> regular part of the nonprofit activities of a public
> broadcasting entity (as defined in section 118(f))
> infringed by performing a published nondramatic literary
> work or by reproducing a transmission program
> embodying a performance of such a work.

17 U.S.C. § 504(a), (b) and (c)(1) and (2).

The statutory damages provision of the Copyright Act has both deterrent and compensatory components. *Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir.1996).

> [S]tatutory damages for copyright infringement are not only
> "restitution of profit and reparation for injury," but also are in the
> nature of a penalty, "designed to discourage wrongful conduct." "The
> discretion of the court is wide enough to permit a resort to statutory
> damages for such purposes. Even for uninjurious and unprofitable
> invasions of copyright the court may, if it deems it just, impose a
> liability within statutory limits to sanction and vindicate the statutory
> policy."

*Id*, at 643 (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952)) (footnote and emphasis omitted).

- 4 -

Within the above stated statutory limits, the assessment of damages is within a court's discretion. See *F.W. Woolworth*, 344 U.S. 228, 231–32 (1952). Statutory damages are "designed to discourage wrongful conduct" and "vindicate the statutory policy." *Id*. at 233.

This Court finds  statutory damages of 10,000.00 per infringement to be reasonable, considering: the  factual history of this case, including Defendants' failure to provide accurate records in order for Plaintiffs to determine the profits made for the infringements; Defendants' undisputed continued infringement after the initiation of this suit; the need for specific deterrence of the Defendants' further copyright violations; the need for general deterrence for others who may consider engaging in copyright violations; and comparative awards of statutory damages by other federal district courts confronted with similar violations.

Plaintiffs seek recovery of Defendants' entire gross revenue because Defendants have failed to provide Plaintiffs with records needed for Plaintiffs to ascertain the actual profits received as a result of Defendants' infringement. Alternatively, Plaintiffs seek statutory damages.  Defendants argue that they earned a total of $70,390.10 as a result of the use of Plaintiffs' images. Defendants further assert the reports submitted by Plaintiffs reflect Defendant AVELA's historical gross revenue for all of its business operations and has

nothing to do with the revenue earned by Defendants as a result of licensing the relevant images.

This case has had a tortured and laborious discovery history.  The parties have engaged in extensive battles for production of Defendants' records.  The Court is indeed sympathetic to Plaintiffs' difficulties in obtaining accurate records throughout the entire history of this matter.  The Court, therefore, recognizes Plaintiffs' continued frustration with the inability to receive reliable, accurrate and complete records for assessment of damages.  By the same token, the Court recalls that Defendants were sanctioned in the past for failing to provide properly requested discovery, and promptly satisfied the sanction.

Having so recognized Defendants compliance with the Court's sanction, the Court is, however,  unpersuaded that  Defendants' claim that it earned a total of $70390.10 from the infringement of Plaintiffs' copyrights is entirely accurate. Over the course of the time period in question, Defendants' records that have been produced indicate that the license royalties they received far exceed the stated total.  As such, the Court will not rely on Defendants' self serving totals provided by the Declaration of Ms. Acuna, who was not produced for deposition in this matter.

The most sound course of action in the Court's opinion is granting

Plaintiffs' alternative selection of statutory damages.  With respect to whether Defendants' infringements were willful, the record, as well as the Eighth Circuit Court's opinion lends some support to Defendants' position that the infringements were not willful, as Defendants only copied posters which were in the public domain.  However, on the other hand, the posters themselves were not simply copied and reproduced, rather, they were used for licenses to its licensees in ways which were *not* in the public domain, and therefore were infringing.  Plaintiffs have submitted proof of 257 registered copyrights owned by Plaintiffs: the copyright in the film *the Wizard of Oz*, the copyright in the film *Gone with the Wind* and the copyrights in 255 *Tom and Jerry* cartoons.  Thus, the Court will award statutory damages for each copyright infringed.  The statute provides for a minimum of $750.00 and a maximum of $30,000.  As stated above the Court has considered this entire record, the proceedings herein and the events that have led to this point in the litigations.  The Court, in its discretion, is of the opinion $10,000.00 per infringement, for a total of $2,570,000.00 is reasonable. Judgment will be entered accordingly.

## Trademark and Unfair Competition Claims

The Court, in its Opinion, Memorandum and Order denied Plaintiffs' Motion for Summary Judgment with respect to Plaintiffs' trademark and unfair

competition because Plaintiffs had failed to present evidence that Plaintiffs own

valid, distinctive, protectable trademarks in those aspects of the films that are the

subject to this controversy.  Plaintiffs have now presented reliable, undisputed

documentation of the trademarks in the images from the films such that they are

entitled to summary judgment.[2]

## Summary Judgment Standard

The standards for summary judgment are well settled.  In determining

whether summary judgment should issue, the Court must view the facts and

inferences from the facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City

of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006).  The moving party has the

burden to establish both the absence of a genuine issue of material fact and that it is

entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[2]  Defendants argue that Plaintiffs have abandoned their trademark and unfair competition claims.  Plaintiffs have not.  Plaintiffs' statement "[i]f the grant of summary judgment on the copyright claim is appealed and subsequently affirmed by the appellate court, Plaintiffs will not need to pursue the other pending claims in the district court," does not render these claims abandoned.  Because the Court of Appeals did not affirm the entire ruling of this Court, Plaintiffs are clearly entitled to proceed with their trademark claims to prevent the unauthorized use of Plaintiffs' trademarks.

(1986);  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  Once

the moving party has met this burden, the nonmoving party may not rest on the

allegations in his pleadings but by affidavit or other evidence must set forth

specific facts showing that a genuine issue of material fact exists.  Fed.R.Civ.P.

56(e); *Anderson* 477 U.S. at 256;  *Littrell* , 459 F.3d at 921.  "The party opposing

summary judgment may not rest on the allegations in its pleadings; it must 'set

forth specific facts showing that there is a genuine issue for trial.'"  *United of*

*Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting

Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary

judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)."  *Hitt v.*

*Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004).  An issue of fact is genuine when

"a reasonable jury could return a verdict for the nonmoving party" on the question.

*Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.  To survive a motion for

summary judgment, the "nonmoving party must 'substantiate his allegations with

sufficient probative evidence [that] would permit a finding in [his] favor based on

more than mere speculation, conjecture, or fantasy.'  *Wilson v. Int'l Bus. Machs.*

*Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)."  *Putman v. Unity*

*Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).  A party may not merely

- 9 -

point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005).  Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir.2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007).

Defendants have failed to controvert any of Plaintiffs' uncontested facts as required by this Court's Local Rule 7-4.01.  As such, the following facts are deemed admitted.

**Trademarks From The Film *The Wizard of Oz***

Beginning with the release of *The Wizard of Oz* in 1939, the successive

- 10 -

owners of the film have consistently licensed the use of images from the film as

trademarks for a wide variety of products. Metro-Goldwyn-Mayer's parent

company, Loew's, Inc., administered licensing and advertising for the 1939 release.

The 1939 theatrical campaign book that was  produced by Loew's for *The Wizard

of Oz* noted, "We also have in work a big two-color supplement which will be

identified on its cover by the words: MERCHANDISINGEXPLOITATION

SUPPLEMENT. It will contain an imposing list of national manufacturers

who are cooperating with us in the matter of merchandising the picture…. In the

meantime we are publishing herewith the licensees whose products will be featured

in that supplement." The campaign book then listed the manufacturers with Loew's

licenses that had been granted or were pending.

The September 2, 1939 edition of the Motion Picture Herald, a trade journal

of the motion picture industry, featured an article about new character licensing

efforts by film studios M-G-M/Loew's Inc. and Paramount Pictures with the

headline, "Metro and Paramount Licensing Manufacturers, Expect $600,000 New

Departments Handle Licensing on Wizard of Oz, Gulliver's Travels, and Gone with

the Wind." Regarding *The Wizard of Oz*, the article stated, "To protect themselves

as copyright owners as well as to further popularize the individual picture through

merchandising tie-ups, Metro-Goldwyn-Mayer has created a royalty department

- 11 -

under the supervision of Howard Deitz, advertising and publicity head of the company." The article listed the manufacturers with Loew's licenses that had been granted or were pending.

*The Wizard of Oz* merchandise using either direct likenesses of the film actors or incorporating film stills – that was licensed by Loew's and sold in the United States during the period from 1939-42 – included: rubber figurines by A.A. Burstine Sales Organization; Judy Garland dolls by Ideal Novelty & Toy Co., marked, "Judy Garland as Dorothy in The Wizard of Oz"; Scarecrow dolls by Ideal Novelty & Toy Co., marked, "The Strawman by Ray Bolger of The Wizard of Oz"; paper and gauze masks of the film cast by Einson-Freeman Co., and Newark Mask Co., respectively; costume jewelry by Hollywood Jewelry Co.; valentine cards by American Colortype Co.; scarves decorated with film scenes and characters by Brian Fabrics; soap figurines by Kerk Guild; girls' hair bows sold on decorated cards by John C. Wellwood Co.; dress tags by L. Gidding Co.; a photoplay edition of The Wizard of Oz by Bobbs-Merrill Co.; and a 78-rpm record album set by Decca Records.

*The Wizard of Oz* merchandise using either direct likenesses of the film actors or incorporating film stills that was licensed by Metro-Goldwyn-Mayer, and sold in the United States after 1966, included: picture puzzles issued by Jaymar

- 12 -

from circa 1968-1973; porcelain figurines by Seymour Mann in 1974; a line of

dolls and play sets (which were endorsed by the surviving *Wizard of Oz* movie

actors) by Mego Toy Corp., issued from 1975-76; a line of Halloween costumes by

Ben Cooper in 1975; a series of craft kits by Friends Industries in 1975; a series of

collector's plates by Knowles, issued from 1977-79; a Judy Garland as Dorothy

doll by Effanbee in 1984; and a Judy Garland as Dorothy figurine by Avon in 1985.

For the 1989 50th anniversary of *The Wizard of Oz*, dozens of manufacturers

were licensed to produce a broad range of merchandise ranging from children's

toys to novelty items to high-end collectible items. All 50th anniversary

merchandise was created in the likeness of the film actors and incorporated film

stills.

Examples of licensed *The Wizard of Oz* merchandise produced in the

likenesses of the film actors, as cited above and as issued from 1939 to 1990, may

be found in the book *The Wizard of Oz Collector's Treasury* by Jay Scarfone and

William Stillman (Schiffer Publishing, Ltd., 1992). Samples may be seen on the

following pages, copies of which are attached to Exhibit 1 as Exhibit A: books,

page 53; calendars, pages 115, 117; chess set, page 85; cookie jars, page 122;

costumes and masks, pages 91-94; Dixie Cups, page 119; figurines, pages 123,

125, 128; greeting cards, pages 172-174; holiday ornaments, page 245; magnets,

page 122; pens and pencils, pages 120-121; plates, pages 76-84; puppets, pages 248, 250; stained glass designs, page 122; toiletry kits, page 245; and wind-up toys, page 244.

Images from the film continue to be licensed for use in connection with a variety of goods including, among other things, apparel, including T-shirts and sportswear, footwear, music boxes, water globes, tin signs, candlestick holders, fabric, greeting cards, party goods, ornaments, gift wrap, tabletop gift ware, hosiery, board games, talking key chains, dolls, trivia games, sewing patterns, salt and pepper shakers, glassware and plates.

Images from the film that have been and continue to be used as trademarks include Dorothy as portrayed in the film by Judy Garland, the Tin Man as portrayed in the film by Jack Haley, the Cowardly Lion as portrayed in the film by Bert Lahr, the Scarecrow as portrayed in the film by Ray Bolger and the Wicked Witch of the West as portrayed in the film by Margaret Hamilton.

**Trademarks From The Film *Gone With The Wind***

Like *The Wizard of Oz,* the successive owners of *Gone with the Wind* have consistently licensed the use of images from the film as trademarks for a wide variety of products since the film's release. Merchandise has been licensed for trademark use featuring the images of Vivien Leigh as Scarlett O'Hara, Clark

Gable as Rhett Butler, Hattie McDowell as Mammy, Leslie Howard as Ashley

Wilkes and Olivia de Havilland as Melanie, among others.

For the 1939 premier of the film, M-G-M's advertising department prepared

or authorized all advertising and promotional items that featured images from the

film. For example, the World Premier Ball program featured an image of Scarlett

and Rhett from the film, while the back cover included an advertisement for the

Nunnally Candy Company that featured "Scarlett Chocolates" and included

photographs of Vivien Leigh and Clark Cable in their roles as Scarlett and Rhett.

The Nunnally Candy Company was an Atlanta company that distributed its

products throughout the United States. In addition to using images from the film in

its advertising, Nunnally sold candy in a box that used licensed images of the actors

in their film roles. Nunnally sold candy varieties called Scarlett Fantasies, Rhett

Caramels and Melanie Molasses, all using the film images on the candy boxes.

In 1940, Merrill Publishing produced and sold paper doll books under

license. The front and back covers featured images of the actors Vivien Leigh,

Clark Gable and Ann Rutherford as their film characters.  Merrill Publishing also

licensed the use of the image of Vivien Leigh as Scarlett O'Hara in 1940 for use in

connection with its "Gone with the Wind Paint Book."

Slidewell Neckwear of New York City marketed the "Rhett Butler Bow" tie

in 1940 under a license to use images of Clark Gable as Rhett Butler in advertisements for the product.

Similar to Rhett's bow tie, a "simulated" cameo brooch and a "simulated" pearl brooch, designed to be replicas of jewelry worn by Vivien Leigh in the film, were sold in 1940 featuring an image of Vivien Leigh as Scarlett O'Hara.

In the 1950's, M-G-M licensed images from the film of Clark Gable as Rhett Butler and Vivien Leigh as Scarlett O'Hara for use in connection with record album covers distributed by RCA Victor and Warner Bros. Records, among others.

Theatres in 1968 used a license to include images from the film on five-inch plastic drink cups that featured images of the actors as Rhett and Scarlett in a steamy embrace.

Gameophiles Unlimited of Berkley Heights, New Jersey licensed the use of an image of Vivien Leigh as Scarlett O'Hara prancing down the drive at Tara on the cover of a 500-piece Gone with the Wind jigsaw puzzle in 1972.

The 1970's saw licensed use of the actors' images as their film characters on men's neckties and on calendars.

Beginning in 1978, the Edwin Knowles China Company produced under license thousands of plates featuring numerous scenes from the film, including the starring actors in their film roles.

- 16 -

In the 1980's, the Peggy Nesbitt Doll Company produced dolls featuring the actors from the film under license, and Avon Products marketed porcelain figurines of the film characters.

The images from the film continue to be licensed for use in connection with a number of goods including, among other things, gifts and collectibles, water globes, jewelry boxes, figurines, greeting cards and ornaments.

**Trademarks From The Films And TV Series *Tom And Jerry***

The cartoon characters Tom and Jerry as they have been depicted in the *Tom and Jerry* films and television series have been the subject of numerous trademark licenses since as least as early as 1948.

In a license agreement dated January 21, 1948, Warner Bros.' predecessor Loew's licensed the Tom and Jerry cartoon characters to Coventry Ware, Inc. for use as trademarks in connection with a number of consumer products, including "ceramic and/or composition figurines, flower holders, bookends, wall brackets, boxes, candy dishes, ash trays, paper weights, pipe racks, urns, beakers, mugs, vases, door stops, bowls, candles sticks, coin banks, cream and milk pitchers, salt and pepper shakers, teapots, and sugar bowls and creamers."

Loew's granted the Norwich Knitting Co. in a license dated July 15, 1948 (renewed in 1949 and 1951) the right to use the Tom and Jerry characters as

trademarks in connection with children's sweatshirts, t shirts and polo shirts.

In October 1948, Loew's granted licenses to Pennant Boyswear to use the Tom and Jerry characters as trademarks in connection with ties, mufflers, suspenders and suspender clips.

Other trademark licenses that were granted include those to Georgene Novelties, Inc. in 1948 for the Tom and Jerry characters in connection with stuffed dolls; to Jay V. Zimmerman Company in 1951 for the Tom and Jerry characters in connection with hand puppets; to Sawyer's Inc. for the Tom and Jerry characters in connection with View-Master reels; and to J. Halpern Company for the Tom and Jerry characters in connection with masquerade costumes and masks.

Consumer goods featuring the licensed trademark images of Tom and Jerry from the 1940's to the present can be found on auction sites such as eBay and include items such as puzzles, kaleidoscopes, toy figures, vhs tapes, water guns, record jackets, comic books, view master reels, porcelain figurines, coloring books, stamp sets, jelly glasses, games, wristwatches, lunch boxes, bendable figures, coin banks and egg cups.

As author T.R. Adams described it in his book *Tom and Jerry Fifty Years Of Cat and Mouse* (Crescent Books, 1991), after M-G-M acquired the rights to Tom and Jerry, there were a wide variety of licensed Tom and Jerry "tie-ins" including

scarves and handkerchiefs, brooches, charm bracelets, sweatshirts, games, balloons, bicycle horns, puppets and books. As Adams noted, "these novelties, aimed mainly at children, would tide the tried and true Tom & Jerry fan through the long hours until a trip to the movies could be arranged from raided piggybanks or suitably sweet-talked parents."

Warner Bros. continues to license the Tom and Jerry cartoon characters for trademark use in connection with all manner of goods, including apparel, printed checks and checkbook covers.

Although Defendants attempt to avoid the finding of a valid trademark by arguing that hundreds of third parties use different images of each of the characters from the films or the cartoons, Defendants cannot overcome the reality that a valid trademark in the images in the films and cartoons  as such exists.  Plaintiffs' trademarks are solely in the images from the films and cartoons, not from other sources, such as the books which created the fictional characters.  Any images from sources other than the specific films, *the Wizard of Oz* or *Gone With the Wind* or the *Tom and Jerry* cartoons are not in issue, and clearly would not cause confusion with the films and cartoons because of the notoriety of the films and cartoons.. Plaintiffs claim trademarks *only in* the films and cartoons.

Plaintiffs have provided an abundant amount of evidence which clearly

establishes a valid, protect able trademark in the characters in the films and cartoons.  The Court's previous ruling detailed its findings with respect to the elements of trademark infringement.  Those findings remain, and Defendants' failure to now contest the facts which establish a valid protect able trademark entitle Plaintiffs to judgment as a matter of law on their trademark and unfair competition claims.

Accordingly,

**IT IS HEREBY ORDERED** that statutory damages in the amount of $2,570,000.00 is awarded to Plaintiffs for Defendants' copyright infringements.

**IT IS FURTHER ORDERED** that Plaintiffs are granted summary judgment on their trademark and unfair competition claims.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 31st  day of March, 2014.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE


- 20 -